UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TERRICA BRUMFIELD                                    CIVIL ACTION
ON BEHALF OF D.D.B.

VERSUS                                               NO. 12-1611

MICHAEL J. ASTRUE, COMMISSIONER                      SECTION "F" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Terrica Brumfield, on behalf of her minor child, D.D.B., seeks judicial review

pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of

the Commissioner of the Social Security Administration (the "Commissioner"), denying

plaintiff's claim for childhood Supplemental Security Income ("SSI") benefits under

Title XVI of the Act. 42 U.S.C. § 402 et seq. The matter was referred to a United States

Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

Instead of filing a memorandum of facts and law as ordered, Record Doc. No. 13,

plaintiff filed a motion for summary judgment. Record Doc. No. 14. Defendant filed a

timely reply memorandum of facts and law. Record Doc. No. 15.

## I.   PROCEDURAL HISTORY

D.D.B. was 15 years old when his mother applied for SSI on his behalf on

February 18, 2010, alleging a disability onset date of August 1, 1999, due to a learning

disability, attention deficit hyperactivity disorder, oppositional defiant disorder and

speech problems. (Tr. 43, 88, 125, 129). After the application was denied, plaintiff filed

a timely request for a hearing, which was conducted before an ALJ on December 2, 2010. (Tr. 31-41).  D.D.B. was 16 years old on the date of the hearing.  The ALJ issued a decision on January 28, 2011, finding that D.D.B. was not disabled.  (Tr. 14-27).  After the Appeals Council denied plaintiff's request for review on April 25, 2012 (Tr. 1-3), the decision of the ALJ became the final decision of the Commissioner for purposes of this court's review.

II.    STATEMENT OF THE ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.    The ALJ erred by failing to explain adequately his reasons why D.D.B. does not meet any listing and by failing to find that D.D.B. meets Listing 112.11 for attention deficit hyperactivity disorder.

B.    The ALJ erred by failing to account for plaintiff's need for medication and a highly structured setting, as required by Social Security Rulings 09-1p, 09-2p and 20 C.F.R. § 416.924a(b)(5), in finding that D.D.B. has less than marked limitations in each of the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

A.    D.D.B. was an adolescent on the date of his application and is currently an adolescent.

B.    He has severe impairments consisting of disruptive behavior disorder, not otherwise specified; opposition defiance disorder, by history; academic problems, learning disorder, by history; parent/child relational problems; and attention deficit hyperactivity disorder.

    C.     Plaintiff's impairments do not meet or medically equal the criteria for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ specifically considered section 112.00 (Mental Disorders) of the listings and found that the medical evidence does not document listing-level severity of plaintiff's impairments, singly or in combination.

    D.     D.D.B. does not have an impairment or combination of impairments that functionally equals the listings.

    E.     He has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. He has no limitations in the domains of moving about and manipulating objects, caring for himself, and health and physical well-being.

    F.     D.D.B. has not been disabled since February 18, 2010, the date of his application.

(Tr.  17-27).

## IV.   ANALYSIS

### A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971);

Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Harper v. Barnhart, 176 F. App'x 562, 565 (5th Cir. 2006); Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To qualify for SSI, a claimant must be "disabled" as defined by the Act.  42 U.S.C. § 423(a)(1)(D).  In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("1996 Act"), which redefined the eligibility standard for children under the SSI disability determination process.  This statute applies to all child disability applicants who filed claims on or after August 22, 1996 or whose cases were not finally adjudicated before that date.  Id. § 211(d)(1)(A)(I).

According to the 1996 Act, "[a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 1382c(a)(3)(C)(i).

The Commissioner's final regulations in effect at the time of the ALJ's decision provide a three-step procedure for evaluating a child's claim of disability. The first step is to determine whether the claimant is engaging or has engaged in substantial gainful activity. If the answer is "yes," the claimant will be found not disabled. If the answer is "no," the second step requires a determination whether the claimant has a medically determinable severe impairment. If not, the claimant will be found not disabled. If the claimant has such an impairment, the last step is to determine whether the impairment meets or equals in severity, either medically or functionally, an impairment listed in Appendix 1, Subpart P, Part 404 of the Commissioner's regulations (the "Listings"). If the claimant has such an impairment and the impairment meets the duration requirement, the claimant will be found disabled. If not, the claimant will be found not disabled. 20 C.F.R. § 416.924 (2010).

An ALJ must assess functional equivalence in children by examining the child's limitations in six domains: "(i) Acquiring and using information; (ii) Attending and

completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." Id. § 416.926a(b)(1). An impairment or combination of impairments functionally equals a listed impairment if it results in marked limitations in two domains or an extreme limitation in one domain. Id. § 416.926a(a).

The claimant has the burden of proof at all steps of the inquiry. E.R.H. v. Comm'r of Soc. Sec. Admin., 384 F. App'x 573, 575 (9th Cir. 2010) (citing 20 C.F.R. §§ 404.1512(a), 404.1512(c)); Neal ex rel. A.T. v. Astrue, No. 2:10-CV-324-FTM-DNF, 2011 WL 4459177, at *1 (M.D. Fla. May 19, 2010) (citing 42 U.S.C. §§ 423(d)(5)(A), 1385c(a)(3)(H)(I); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. § 416.912(a), (c)); Mitchell v. Astrue, No. CIV-10-0864-HE, 2011 WL 2457197, at *1 (W.D. Okla. June 20, 2011) (citing Maffia v. Comm'r of Soc. Sec., 291 F. App'x 261, 263 (11th Cir. 2008); Espinosa v. Astrue, 2009 WL 331600, at *2 (M.D. Fla. 2009)).

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174; accord Perez v. Barnhart, 415 F.3d 457, 462 (5th Cir. 2005).

B.     Factual Background

The claimant's mother, Terrica Brumfield, testified that D.D.B. is 16 years old and in the ninth grade in special education classes.  When asked whether her son was in school at the time of the hearing, she stated that he had been refused entry to the school bus the day before because of the unacceptable way he had styled his hair.  She said he attends Northwood Academy, a boot-camp-type of school for children with problems, and he refuses to cut his hair to conform with school rules.  (Tr. 35-36).

Brumfield stated that D.D.B. has behavior problems at school, which have included throwing tantrums, throwing desks, fighting with other children and being "very emotional with his teacher."  She testified that he will not do his school work and that his teacher "constantly" calls her to come get D.D.B. from school because of these problems. Plaintiff's mother said that, when he acts like this, the school either suspends him or calls his parole officer, and that he has to go to court every Tuesday.  She stated that he has been sent to Florida Parishes Juvenile Detention Center (the "Detention Center ") and/or has been given community work to do.  (Tr. 36).  She testified that her son was sent to the Detention Center most recently because he threw a desk and the teacher's cellphone. She said that his parole officer was told about this incident and that when D.D.B. went to court the next Tuesday, the court already knew about it and sent him to the Detention Center for a week as punishment.  She stated that neither the punishment he receives nor the work his parole officer does with him changes his behavior.

Brumfield testified that D.D.B. takes Concerta[1] and Trazodone[2] at night, but that the medications do not help.  She said he constantly fights with his sisters and brothers, throws things, takes his siblings' possessions, fights with their animals, threw a hamster against a tree and "hollers through the house" when he gets angry.  She stated that he has been violent with his siblings at home.  (Tr. 37).

Plaintiff's mother said he writes sentences very tightly together.  She testified that he can barely read but does not want to admit that he cannot, and he will say that he can read.  She stated that she has tried to help him with his homework, but that he gets irritated because he does not understand it.  She said he does not want his friends to know that he cannot read.  She testified that when a teacher takes him aside to try to explain something, which the teacher does three to four times a day, he does not accept the teacher's help and he gets irritated because he does not understand.  She said he has not had any after-school tutoring because he does not want it.  (Tr. 38-39).

Brumfield testified that D.D.B. was arrested for the first time for going on to someone else's property and "taking their stuff."  She said he leaves the house without telling her, which causes a problem between the two of them.  She stated that she does

---

[1]Concerta (generic name:  methylphenidate) is a central nervous system stimulant indicated for the treatment of attention deficit hyperactivity disorder in children, adolescents and adults.  It "may help increase attention and decrease impulsiveness and hyperactivity in patients with ADHD."  Physicians' Desk Reference 2604 (64th ed. 2010).

[2]Trazodone hydrochloride is indicated for the treatment of major depressive disorder in adults. Id. at 637.

not know why D.D.B. is so angry.  She said that four of her six children are like that, while two of them "are alright."  She stated that her children range in age from 14 to 21 years old.  When asked what her son likes to do, plaintiff's mother said she does not even know, because he throws so many tantrums, and that he really does not like to do anything.  (Tr. 39-40).

Brumfield stated that she wants her son to improve and finish school.  She said she has talked to his doctor about how to accomplish this and that, in addition to taking medication, D.D.B. goes to counseling with one of his siblings who also has temper tantrums.  (Tr. 40).

C.    <u>Medical Evidence</u>

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 17-25).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

D.    <u>Plaintiff's Appeal</u>

1.    The ALJ did not err by failing to explain adequately his reasons why D.D.B. does not meet any listing or by failing to find that D.D.B. <u>meets Listing 112.11 for attention deficit hyperactivity disorder.</u>

Plaintiff argues that the ALJ erred by failing to explain adequately his reasons why D.D.B. does not meet any listing and by failing to find that D.D.B. meets Listing 112.11 for attention deficit hyperactivity disorder.  At step three of the sequential evaluation, the

ALJ considered D.D.B.'s severe impairments of disruptive behavior disorder, not otherwise specified; opposition defiance disorder, by history; academic problems, learning disorder, by history; parent/child relational problems; and attention deficit hyperactivity disorder, and held that these impairments did not meet or medically equal in severity any listed impairment. The ALJ stated that he "specifically considered section 112.00 (Mental Disorders)" of the listings in making this determination, but that the "medical evidence [does] not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, either singly or in combination." (Tr. 17). Plaintiff contends that the ALJ's generic statement in this regard and his failure to discuss Listing 112.11 specifically are reversible error under Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007). He asserts that the medical evidence demonstrates that he meets or equals Listing 112.11.

Whether an impairment or combination of impairments meets a listing is a medical question that can be answered only by medical evidence. 20 C.F.R. §§ 404.1526(b), 416.926(b); McCuller v. Barnhart, 72 F. App'x 155, 158 (5th Cir. 2003); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990); McKnight v. Astrue, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008), report & recommendation adopted, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), aff'd, 340 F. App'x 176 (5th Cir. 2009). "The specified medical criteria [of a listing] are designed to be demanding and stringent because they lead to a presumption of disability[,] making further inquiry unnecessary."

Anderson v. Astrue, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), report & recommendation adopted, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing Sullivan v. Zebley, 493 U.S. 521, 532 (1990); Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994)).

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Zebley, 493 U.S. at 5301 (citing 20 C.F.R. § 416.926(a); SSR 83-19, at 91) (emphasis in original).

"An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify.  If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present."  Gewin v. Astrue, No. 10-1008, 2011 WL 3924232, at *3 (W.D. La. Aug. 3, 2011), report & recommendation adopted, 2011 WL 3954877 (W.D. La. Sept. 6, 2011) (citing Zebley, 493 U.S. at 530-31; Selders, 914 F.2d at 620); accord Taylor v. Astrue, No. 3-10-CV-1158-O-BD, 2011 WL 4091506, at *8 (N.D. Tex. June 27, 2011), report & recommendation adopted, 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011), aff'd, 706 F.3d 600 (5th Cir. 2012).

These requirements that an impairment and its severity be established by medical evidence also apply to children alleging a mental disability.  20 C.F.R. Part 404,

Subpart P, Appendix 1, § 112.00(B), (C), (D).  Information from non-medical sources, such as parents and teachers, "should also be used to supplement the record of the child's functioning to establish the consistency of the medical evidence and longitudinality of impairment severity."  Id. § 112.00(D).  Thus, D.D.B. must identify specific medical evidence demonstrating that he meets or medically equals all the criteria of Listing 112.11.

The Fifth Circuit has consistently rejected the argument that an ALJ must always explain in detail his reasons for finding that a claimant does not meet a particular listing. "[T]he ALJ is not always required to do an exhaustive point-by-point discussion" of the evidence at the third step of the sequential evaluation.  Audler, 501 F.3d at 448 (emphasis added).  Plaintiff "cites no binding authority for the contention that the ALJ is required to articulate the reasons supporting his finding under step three.  Thus, the sole question before this court is whether substantial evidence supports the ALJ's finding that [plaintiff] did not have an impairment under [the listing]."  Bullock v. Astrue, 277 F. App'x 325, 327-28 (5th Cir. 2007) (citing Selders, 914 F.2d at 614).  D.D.B. cites no binding authority, and my research has located none, that requires the ALJ to articulate with greater specificity his reasons for rejecting plaintiff's argument that D.D.B. meets or medically equals Listing 112.11.  Although the ALJ did not discuss the evidence specifically under this particular finding, it is clear from the entirety of his lengthy opinion that the ALJ exhaustively reviewed the record in reaching his conclusions.

Even if the ALJ erred by failing to discuss the listing specifically, the error is harmless unless D.D.B. can point to substantial medical evidence that he meets the listing.  An ALJ's failure to explain his step three findings "does not require remand unless the claimant's 'substantial rights' were affected.  A claimant's substantial rights are affected at Step 3 when he demonstrates that he meets, or at least appears to meet, the requirements for a Listing.  In other words, the ALJ's error may be harmless." Reynolds v. Astrue, No. 1:08cv228-SAA, 2010 WL 583918, at *6 (N.D. Miss. Feb. 16, 2010) (citing Audler, 501 F.3d at 448; Morris v. Bowen, 864 F.2d 333, 334 (5th Cir. 2007)); accord Tolliver v. Astrue, No. 6:09-cv-0135, 2010 WL 3522396, at *6 (W.D. La. July 29, 2010) (citing Audler, 501 F.3d at 448), report & recommendation adopted, 2010 WL 3522502 (W.D. La. Aug. 31, 2010).

D.D.B. has failed to identify substantial evidence to establish that he meets all the criteria of Listing 112.11 for attention deficit hyperactivity disorder, which provides as follows:

112.11     Attention Deficit Hyperactivity Disorder:   Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
        The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
A.  Medically documented findings of all three of the following:
1. Marked inattention; and
2. Marked impulsiveness; and
3. Marked hyperactivity;
AND

B.  For . . .children (age 3 to attainment of age 18), resulting in <u>at least two</u> of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Part 404, Subpart P, App. 1, § 112.11 (emphasis added).

Paragraph B of Listing 112.11 incorporates paragraph B(2) of Listing 112.02 for

organic mental disorders, which provides:

B.   Select the appropriate age group to evaluate the severity of the impairment:
. . . .
2.  For children (age 3 to attainment of age 18), resulting in <u>at least two</u> of the following:
a.   Marked impairment in age-appropriate cognitive/communicative function, <u>documented by medical findings</u> (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
b.  Marked impairment in age-appropriate social functioning, <u>documented by history and medical findings</u> (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
c.   Marked impairment in age-appropriate personal functioning, <u>documented by history and medical findings</u> (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or
d.  Marked difficulties in maintaining concentration, persistence, or pace.

<u>Id.</u> § 112.02(B)(2) (emphasis added).

"The functional restrictions in paragraph B must be the <u>result</u> of the mental disorder which is manifested by the medical findings in paragraph A." <u>Id.</u> § 112.00(A) (emphasis added).

"Marked" as used in paragraph B of Listing 112.02

means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis. When standardized tests are used as the measure of functional parameters, a valid score that is two standard deviations below the norm for the test will be considered a marked restriction.

<u>Id.</u> § 112.00(C).

Substantial medical evidence supports the ALJ's finding that D.D.B. does not meet or medically equal all the criteria of Listing 112.11 for attention deficit hyperactivity disorder. On April 16, 2010, Kelly Ray, Ph.D., a psychological consultant for the Commissioner at the initial disability determination level, reviewed the medical and school evidence, which included psychological testing and examinations of D.D.B. conducted by clinical psychologist Sandra Durdin, Ph.D. (Tr. 181-84), and David Clark, Ed.D., Psychology (Tr. 197-99). In addition to examining and testing D.D.B., Dr. Clark reviewed Dr. Durdin's report before rendering his own opinions. Dr. Ray accurately summarized the evidence and concluded that plaintiff's severe impairments do not meet, medically equal or functionally equal any listing. (Tr. 201-07).

"State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."  20 C.F.R. § 404.1527(f)(2)(i). "Although ALJs 'are not bound by any findings made by State agency medical or psychological consultants,' they must consider such findings as opinion evidence." Alejandro v. Barnhart, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (quoting 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)); accord Butler v. Barnhart, 99 F. App'x  559, 560 (5th Cir. 2004) (citing 20 C.F.R. § 404.1527(f)(2)(i)).

Plaintiff's argument that his attention deficit hyperactivity disorder causes marked limitations in at least two areas of functioning as defined by paragraph B of Listing 112.02 is not substantially supported by the medical evidence.  Dr. Durdin reviewed plaintiff's school records and performed a consultative examination on May 7, 2007 in connection with plaintiff's prior application for SSI.  She found that D.D.B. was "hostile, aggressive and rude" when not given medication and that he had only one F during his fifth grade year.  D.D.B. told Dr. Durdin that he can read and that he likes math and does well in that subject.  His mother told Dr. Durdin that D.D.B. has behavioral problems, sees a psychiatrist at the Independence Multipractice Clinic, and takes Ritalin[3] and

---

[3]Ritalin (generic name: methylphenidate) is used to treat attention deficit hyperactivity disorder in children.  When given for attention deficit hyperactivity disorder, "Ritalin should be used as part of a comprehensive treatment program that includes psychological, educational, and social measures." PDRhealth (PDR Network, LLC 2011), http://www.pdrhealth.com/drugs/ritalin.

Clonidine.[4]  However, Brumfield said that she had stopped taking D.D.B. to the doctor

and had stopped giving him any medication for a year to see how he did without it.

---

[4]Clonidine hydrochloride is indicated for the treatment of attention deficit hyperactivity disorder as monotherapy and as adjunctive therapy to stimulant medications.  MediLexicon (MediLexicon Int'l Ltd © 2004-2013), http://www.medilexicon.com/drugs/kapvay.php.

Dr. Durdin observed that D.D.B.'s speech and language were fully intelligible and his thought organization was logical.  She found that his vocabulary, ability to follow directions and abstract reasoning were good and that his pace was normal.  She noted that he was calm, persistent and "performed very well and was polite and on-task." (Tr. 182). Dr. Durdin considered plaintiff's test scores valid.  D.D.B.'s vocabulary score was his only below-average score.  Dr. Durdin opined that his general intelligence fell within the low average to average range.  She concluded that D.D.B.'s "ability to use and acquire information is adequate with variable school performance." (Tr. 183).  She found that his "ability to attend to and complete tasks is variable, but good on medication and in small group instruction.  He did very well one on one . . . .  His ability to interact and relate with others is variable." (Tr. 183).  Dr. Durdin observed that plaintiff's mother "is unable to discipline and control him and apparently had similar problems with her daughter.  There are parenting issues.  His father is not around and was incarcerated until recently." (Tr. 183-84).

Dr. Clark examined both plaintiff and his sister on March 31, 2010.  They were accompanied by their mother, who related plaintiff's history.  D.D.B. presented as poorly groomed, pleasant, cooperative, passive, lethargic and indifferent.   Dr. Clark administered the same IQ test to D.D.B. as Dr. Durdin had done almost three years earlier.  Plaintiff's full scale IQ score for overall intellectual functioning on Dr. Clark's test was only 66, placing him in the mildly mentally retarded range.  There were

"significant variations" in that some subtests were in the mentally retarded range, while others were within the normal and average range.  (Tr. 197-98).

Dr. Clark noted that, in comparison, plaintiff's subtest scores on Dr. Durdin's testing had been within the normal and average range, while his full scale IQ at that time was 87, within the low average range.  Dr. Clark stated:

> It is not possible to do better than one is capable but always possible to do worse.  The fact that [D.D.B.] was able to consistently function within the Average to low Average range on the same instrument less than three years ago would suggest that his performance at this time suggests a significant consistent decrease which is not suggestive of neurological handicap or emotional disturbance.  [D.D.B.] did not present as Malingering but perhaps "under performance."
>
> [D.D.B.'s] overall presentation, manner of dress and ability to communicate verbally would suggest that his potential is more consistent with low Average functioning than with mentally retarded functioning.  In talking with the mother it would appear that he has had little in the way of competent parenting at least within the past three years. . . .
>
> The history and presentation would suggest that [D.D.B.] receives little in the way of supervision and parenting and has failed school for the past two years primarily on the basis of non[-]attendance as well as disruptive behavior.  He will continue to need what ever specialized assistance is available through the school until he drops out.  The history would suggest that he should be competent to maintain employment.  He apparently has had no structure or motivation to do anything in some years and has benefited [sic] little from the past few years of school due in large part to a lack of attendance.  He clearly indicates the capacity to understand and follow directions but apparently has been highly disruptive throughout his school experience.

(Tr. 198).  Dr. Ray, upon reviewing Dr. Clark's report, opined that the significant drop in plaintiff's test scores since Dr. Durdin's testing made it likely that the current scores are not valid.  (Tr. 203).

The medical evidence therefore attributes many of D.D.B.'s behavioral and learning problems to his lack of attendance at school and poor parenting, including Brumfield's decision, unsupported by any medical advice in the record, to stop taking him to a psychiatrist and to stop giving him his prescribed medication for at least a year, some time before he saw Dr. Durdin on May 7, 2007.  The evidence after May 7, 2007 also reveals gaps in D.D.B.'s treatment for attention deficit hyperactivity disorder, including lack of medications.  See Tr. 192 (D.D.B. was no medications on 9/25/09); Tr. 218 (10/20/09 functional behavior assessment by school psychologist in connection with plaintiff's recent suspensions; stating that he engages in disruptive behavior when his medication is not regulated and that a previous individualized plan "reflected Concerta/Clonidine regulation issues"); Tr. 215 (notation in educational re-evaluation report dated 10/26/09 that no medical information had been received since 3/15/07); Tr. 190 (D.D.B. was taking no medications on 2/17/10); Tr. 130-31 (as of 2/18/10, D.D.B. had not returned to the Multipractice Clinic since "years ago," had not taken medication since at least 11/12/09 and had only been seeing a psychiatrist since 11/12/09); Tr. 341 (3/17/10 "Here to start medication management.  Tried several medications in the past. Discussed need to take medications as prescribed and daily") (emphasis in original); Tr. 304-05 (Individualized Education Program dated 3/26/10, stating that D.D.B. is being given a chance to improve his behavior "now that he has medications" and that, although the school is "still awaiting documentation for ADHD from" a doctor, plaintiff's "mom

says he is now on ADHD medications"); Tr. 332-33 (8/26/10 has no medications; refill ordered on 8/30/10).

Although D.D.B. took the LAA2 standardized test for special education students in March 2009, he had to take the regular, standardized LEAP test the following year, "due to non-attendance by parent" at a meeting to authorize the less stringent test.  (Tr. 304).  When D.D.B. began counseling at the Multipractice Clinic in March 2010, his social worker noted his "poor family dynamics" and continued to recommend family treatment.  (Tr. 331, 333, 338).  School officials also attributed D.D.B.'s academic failures to his lack of attendance and discipline issues, with the school principal stating on March 10, 2010 that D.D.B. "failed all classes for last year due to [lack of] attendance" and that, in the 2009-2010 school year, he is "again, not in school consistently."  (Tr. 146).  On October 21, 2009, the school psychologist wrote, and plaintiff's teacher and school principal concurred in the findings, that plaintiff's disability did not "cause or have a direct and substantial relationship to his recent misconduct," for which he had been suspended, because his "behavior is not a function of his learning deficits nor is it impulsive in nature."  (Tr. 228).

The ALJ accorded great weight to Dr. Ray's opinions, which are based on the evaluations of examining psychologists Drs. Durdin and Clark, finding that Dr. Ray's opinions are consistent with the medical evidence of record.  Although there is certainly evidence that D.D.B. has limitations in the four functional areas defined by Listing

112.02(B)(2), Dr. Ray's opinion that plaintiff's limitations in these areas do not reach listing-level severity is <u>not</u> contradicted by any other medical evidence and is substantial evidence on which the ALJ could rely.  This court may not reweigh the evidence or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision, because the Commissioner, rather than the courts, must resolve conflicts in the evidence.  <u>Newton</u>, 209 F.3d at 452.

Plaintiff's substantial rights are not affected by the ALJ's failure to discuss Listing 112.11 specifically because the evidence substantially supports the ALJ's findings that D.D.B. does not meet or medically equal the listing.  Accordingly, this assignment of error lacks merit.

> 2.   The ALJ did not err by failing to account for plaintiff's need for medication and a highly structured setting, as required by Social Security Rulings 09-1p, 09-2p and 20 C.F.R. § 416.924a(b)(5), in finding that D.D.B. has less than marked limitations in each of the domains of acquiring and using information, attending and <u>completing tasks, and interacting and relating with others.</u>

Plaintiff argues that the ALJ erred by finding that his impairments do not functionally equal the listings.  D.D.B. contends that the ALJ failed to account for his need for medication and a highly structured setting, as required by Social Security Ruling ("SSR") 09-1p, SSR 09-2p and 20 C.F.R. § 416.924a(b)(5), and by finding that D.D.B. has less than marked limitations in each of the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others.

SSR 09-2p, "Determining Childhood Disability–Documenting a Child's Impairment-Related Limitations," is concerned with determining childhood disability and how a child's impairments are documented.  Information about any supports that children receive

> can be critical to determining the extent to which their impairments compromise their ability to independently initiate, sustain, and complete activities.  In general, if a child needs a person, a structured or supportive setting, medication, treatment, or a device to improve or enable functioning, the child will not be as independent as same-aged peers who do not have impairments.  We will generally find that such a child has a limitation, even if the child is functioning well with the help or support. The more help or support of any kind that a child receives beyond what would be expected for children the same age without impairments, the less independently the child functions, and the more severe we will find the limitation to be.

SSR 09-2p, 2009 WL 396032, at *5 (Feb. 18, 2009; eff. Mar. 20, 2009) (emphasis added); accord SSR 09-1p, Determining Childhood Disability Under the Functional Equivalence Rule–The "Whole Child" Approach, 2009 WL 396031, at *6 (Feb. 17, 2009; eff. Mar. 20, 2009).

D.D.B. cites the emphasized language above in support of his argument that the ALJ erred in taking into account the evidence that plaintiff functioned better with medication and in the structured setting of special education classes.  However, the SSRs do not mandate a finding of disability if the child is functioning with help or support, nor do they provide that a finding of disability is required for any given level of support. These rulings merely provide that the more help or support received by a child, the less

independently the child functions and the more severe the Commissioner will find the limitation to be.  Here, the ALJ found that D.D.B. has some limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, but that those limitations are less than marked.  SSR 09-1p and 09-2p do not require the ALJ to find greater limitations just because D.D.B. needs medication or placement in special education.

In addition, the ALJ did not err by considering evidence of D.D.B.'s compliance with his treatment and medications.  A claimant "must follow treatment prescribed by your physician if this treatment can restore your ability to work, or, if you are a child, if the treatment can reduce your functional limitations so that they are no longer marked and severe."  20 C.F.R. § 416.930(a).  "If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . ."  Id. § 416.930(a).

The ALJ specifically discussed the "whole child" approach in his decision and cited SSR 09-1p, indicating that he used it as a framework for his decision.  (Tr. 18).  The ALJ extensively discussed the medical, educational and other evidence related to D.D.B.'s abilities to acquire and use information, attend and complete tasks, and interact and relate with others.  Dr. Ray opined that D.D.B. has less than marked limitations in these three domains.  (Tr. 203).  Dr. Ray's opinion is substantial, uncontradicted medical evidence to which the ALJ accorded great weight, finding it consistent with the medical evidence of record.  (Tr. 22).

This court has reviewed the entire record and acknowledges that the evidence provides some support for plaintiff's argument that he has marked limitations in one or more of these three domains.   However, when the record is viewed as a whole, substantial evidence supports the ALJ's decision, which is consistent with the relevant SSRs and other legal requirements.   "The Court may not reverse the decision of the ALJ merely because substantial evidence might have supported a different conclusion."   King ex rel. W.G. v. Astrue, No. 4:11-CV-1923-SPM, 2013 WL 781887, at *8-9 (E.D. Mo. Mar. 1, 2013) (citing Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011)); accord Newton, 209 F.3d at 452.

As a judge in the Western District of Louisiana recently noted in similar circumstances,

> there will almost always be a degree of subjectivity and judgment inherent in determining whether someone's limitation is marked or less than marked.   The ALJ looked to evidence from medical professionals, a teacher, and the parent.   He discussed all of that evidence in significant detail . . . and afforded the opinions' weight based on how consistent he found them to be with the overall record.
>
> Plaintiff complains that a proper weighing of the opinions of the professionals should have resulted in findings of greater degree of limitation.   None of the various reports or opinions may be perfect, but together they provide more than enough to meet the substantial evidence standard, which requires that this court affirm the Commissioner's decision. To warrant judicial relief, the court would have to find that the evidence was so compelling in favor of the claimant that the ALJ was required to find marked limitations in two domains, when he found none in his actual opinion.   The evidence is not so compelling.   One may make reasonable arguments that the evidence should have been assessed differently in the

first instance, but those arguments are beyond the limited role of the court in the review process.

Lee o/b/o R.L. v. Comm'r, Soc. Sec. Admin., No. 11-cv-0910, 2013 WL 639060, at *4 (W.D. La. Jan. 29, 2013), report & recommendation adopted, 2013 WL 639058 (W.D. La. Feb. 21, 2013).

In the instant case, the ALJ "has not failed to consider [the evidence cited by plaintiff]; rather, he failed only to give it the weight plaintiff desired. In attempting to resolve the various conflicts and inconsistencies in the record in accordance with the applicable standards, the ALJ did 'precisely what an ALJ is instructed to do.'" N.R.R. ex rel. Davenport v. Astrue, No. 4:12CV54, 2013 WL 1090397, at *9 (E.D. Mo. Mar. 15, 2013) (quoting Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 666-67 (8th Cir. 2003)); accord Chambliss v. Massanari, 269 F.3d 520, 523 (5th Cir. 2001); Newton, 209 F.3d at 452; McLaughlin v. Astrue, No. 1:11-CV-176-BL, 2013 WL 171902, at *4 (N.D. Tex. Jan. 15, 2013).

Accordingly, this assignment of error lacks merit.

## RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's motion for summary judgment be denied and her complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[5]

New Orleans, Louisiana, this ____24th____ day of April, 2013.

<u>_____</u>
          JOSEPH C. WILKINSON, JR.
       UNITED STATES MAGISTRATE JUDGE

---

[5]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.